IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| QUINTEN A. BOTHWELL, | ) | |
| | ) | |
| Plaintiff, | ) | 4:04CV3298 |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| JO ANNE B. BARNHART, Commissioner of Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

    The plaintiff's applications for disability benefits under Title II of the Social Security Act (Act), 42 U.S.C. §§ 401 *et seq.* (2005) and supplemental security income (SSI) benefits under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq.* were denied initially and on reconsideration. After a hearing, an administrative law judge (ALJ) determined on April 6, 2004, the plaintiff was not disabled under the Act. The Appeals Council of the Social Security Administration denied the plaintiff's request for review on July 27, 2004. The plaintiff now seeks judicial review of the ALJ's decision as it represents the final decision of the defendant Commissioner of the Social Security Administration. The parties consented to jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). **See** Filing No. 16.

    The plaintiff claims the ALJ's decision was incorrect for three reasons: 1) the ALJ failed to correctly evaluate the plaintiff's credibility using proper legal standards; 2) the ALJ utilized a defective hypothetical question; and 3) the ALJ erroneously determined the plaintiff's residual functional capacity (RFC) according to incorrect legal standards.

    The plaintiff filed a brief (Filing No. 17) with attachments and a reply brief (Filing No. 21) in support of this administrative appeal. The defendant filed the transcript of the administrative record (TR.) (Filing No. 12) and a brief (Filing No. 20) opposing the plaintiff's appeal for benefits.

    The Court has reviewed the record, the ALJ's evaluation and findings, the parties' briefs, the transcript, and the applicable law. The Court concludes the ALJ's findings are supported by substantial evidence in the record as a whole.

## PROCEDURAL BACKGROUND

The plaintiff first applied for disability benefits approximately one month after he was injured, on October 18, 1999, and subsequently reapplied on April 19 and September 19 of 2001 (TR. 20, 99-107, 120-33). The plaintiff filed applications for disability benefits pursuant to Titles II and XVI of the Act (TR. 18, 99-107). The applications requested payment of disability insurance benefits under Title II and payment of SSI benefits under Title XVI. *Id.* The plaintiff alleged an inability to engage in any substantial and gainful work activity after September 18, 1999, due to various impairments (TR. 18). All initial applications were denied by administrative determinations on December 21, 1999, October 24, 2001, and April 23, 2002, respectively (TR. 18, 29-50, 52-55, 353-62). The plaintiff asked for reconsideration of his claim for benefits (TR. 50-51). After the Social Security Administration confirmed its initial determinations were correct, the plaintiff requested a hearing before an ALJ on June 18, 2002 (TR. 50-57).

ALJ Jan E. Dutton, who held an administrative hearing, issued a decision on April 6, 2004 (TR. 18-26). The ALJ determined the plaintiff was not disabled pursuant to 20 C.F.R. § 404.1520(f) and 20 C.F.R. § 416.920(f) and was not eligible for disability benefits under Title II or SSI benefits under Title XVI (TR. 26). The Appeals Council of the Social Security Administration denied the plaintiff's request for review on July 27, 2004 (TR. 8-14).

## FACTUAL BACKGROUND

The plaintiff was born on January 25, 1960 (TR. 19, 105). He graduated from high school but received no further formal skill training (TR. 370). The plaintiff's employment history includes work as a machine operator, plumber, thermal cutter, and most recently as an automobile service station attendant (TR. 19, 167). However, since an injury on September 18, 1999, the plaintiff alleges an inability to procure substantial and gainful work (TR. 19).

The ALJ reviewed the medical evidence and found a history of back pain, shoulder pain, and arm pain corresponding to injury on September 18, 1999 (TR. 19-20). On September 18, 1999, the plaintiff's wife stabbed the plaintiff twice in his upper left back (TR.

270). He was admitted to the hospital for treatment of his wounds (TR. 269-78). The plaintiff required surgery to repair his lacerated kidney and underwent a splenectomy (TR. 290-94).

On October 8, 1999, the plaintiff visited Dr. Robert J. Pitsch, M.D. who stated the wounds were healing "nicely" (TR. 309). Dr. Pitsch warned of splenic sepsis risk and instructed the plaintiff regarding the necessary steps should he develop a high fever (TR. 309). The plaintiff requested a prescription for pain medication but Dr. Pitsch advised him to use Advil (TR. 309).

Dr. Tom Chael, M.D. completed a Physical RFC Assessment on December 17, 1999 (TR. 235-42). Dr. Chael concluded the plaintiff did not have any exertional, postural, manipulative, visual, or communicative limitations (TR. 236-39). However, Dr. Chael indicated the plaintiff should avoid all exposure to "fumes, odors, dusts, gases, and poor ventilation" due to the removal of his spleen (TR. 239). Although Dr. Chael declined to make an RFC assessment because the plaintiff was still recovering from surgery, he did state the plaintiff was making a "satisfactory recovery" (TR. 240).

On May 23, 2001, Dr. Jay D. Crowder, M.D. examined the plaintiff and found his physical condition to be the result of stabbing wounds combined with injuries sustained in a motor vehicle accident 17 years prior (TR. 310). During this examination, the plaintiff complained of arm numbness and inability to grasp items, stating he dropped tools and silverware (TR. 310). Dr. Crowder observed the plaintiff appeared to hold his right shoulder lower than the left and suggested the distal clavicle was displaced (TR. 310) Dr. Crowder also noticed a tremor, especially apparent in the right arm (TR. 310). Moreover, Dr. Crowder observed decreased strength and abduction in the right arm and shoulder, while the left arm showed normal strength (TR. 310),

Dr. Crowder reported the plaintiff smoked one and a half packs of cigarettes per day (TR. 310). The plaintiff drank up to twelve beers per day "if increased pain" (TR. 310). Dr. Crowder noted the plaintiff appeared to be "tremulous" and "suspected that he may have been going through some mild withdrawal symptoms" (TR. 310). After speaking with the plaintiff's sister and based on his own observations, Dr. Crowder suspected the plaintiff "chronically abuses alcohol" (TR. 310).

Based on these observations, Dr. Crowder determined the plaintiff would have problems with long periods of standing, sitting, and bending due to back pain (TR. 310). Dr. Crowder concluded the plaintiff's decreased strength in his right arm inhibited his ability to lift and carry (TR. 310). In addition, Dr. Crowder advised the plaintiff not to work at heights due to his "very poor balance" (TR 310). Dr. Crowder expressed concern over the plaintiff's use of alcohol and its effect on his ability to work (TR. 310).

On June 15, 2001, Dr. Glen Knosp, M.D. completed a Physical RFC Assessment concerning the plaintiff's ability to work (TR. 243-50). Dr. Knosp found the plaintiff suffered from mild acromioclavicular (AC) joint separation in the right shoulder (TR. 243). Dr. Knosp gave the following restrictions regarding the plaintiff's activities: occasional lifting of 20 pounds; frequent lifting of ten pounds; standing or walking, with normal breaks, for six hours in an eight-hour workday; pushing and pulling limited in the upper extremities due to right arm weakness from the shoulder separation (TR. 244). Dr. Knosp determined the plaintiff should never work on ladders, ropes, or scaffolds (TR. 245). The plaintiff was able occasionally to stoop, balance, kneel, and crouch but could not crawl (TR. 245).

Regarding manipulative limitations, Dr. Knosp found the plaintiff's ability to reach overhead using his right arm "limited" while the left arm was "unlimited" in this regard (TR. 246). Fine fingering using the right hand was limited and his gross manipulation was unlimited (TR. 246). Dr. Knosp noted these limitations resulted from "right arm weakness due to shoulder with decreased grip" (TR. 246). Dr. Knosp found no visual or communicative impairments but did advise the plaintiff to avoid concentrated exposure to extreme cold and vibrations (TR. 247). Dr. Knosp also recommended the plaintiff "avoid even moderate exposure" to hazards, such as machinery and heights (TR. 247).

In his comments, Dr. Knosp stated the plaintiff does have a history of right arm and shoulder weakness for which he sought no treatment (TR. 248). Regarding the plaintiff's ability to work, Dr. Knosp wrote, "he [the plaintiff] would be limited from some types of work but not from all work tasks" (TR. 248). Dr. Knosp commented the plaintiff "self medicates" with alcohol and noticed he "appeared tremulous" which signaled "withdrawal" (TR. 250).

On October 23, 2001, Dr. Chael completed another Physical RFC Assessment of the plaintiff (TR. 251-59). Dr. Chael gave a primary diagnosis of right shoulder mild AC joint separation and a secondary diagnosis of back pain (TR. 250). Dr. Chael limited the plaintiff to: occasional lifting of 20 pounds; frequent lifting of ten pounds; standing, walking, or sitting for six hours, with normal breaks, in an eight-hour workday (TR. 252). The plaintiff's ability to push and pull was limited in his upper extremities due to right arm weakness from shoulder separation (TR. 252).

Dr. Chael determined the plaintiff could occasionally balance, stoop, kneel, and crouch but could not climb or crawl (TR. 253). Dr. Chael also found the plaintiff's ability to reach in all directions was limited in his right arm, as were his fine manipulation skills (TR. 253). However, the left side was unimpaired (TR. 253). Dr. Chael advised the plaintiff to avoid concentrated exposure to extreme cold and vibration (TR. 255). He also instructed the plaintiff to "avoid even moderate exposure" to hazards such as machinery and heights (TR. 255).

In his comments, Dr. Chael restated the plaintiff's complaints: back, shoulder, arm, and hand pain, and stiffness (TR. 256). These symptoms were brought on by bending, lifting, and writing (TR. 256). Dr. Chael stated a right shoulder x-ray showed "mild superior elevation of the distal clavicle relative to the acromion process raising the possibility of a mild AC separation" (TR. 259). Dr. Chael detected a decrease in grip strength on the plaintiff's right side, as well as a tremor in the right arm and a "mild" tremor in the left arm (TR. 259). In addition, Dr. Chael observed the plaintiff had a "shuffling type gait" but found no evidence of muscle atrophy (TR. 259). Dr. Chael noticed the plaintiff had poor balance and "poor fine motor control" during the finger to nose test (TR. 259).

Based on these observations, Dr. Chael concluded the plaintiff may be limited in some of his day to day activities but these restrictions did not meet a "listed impairment" (TR. 259). Dr. Chael determined the plaintiff should be able to perform light work "with limited right upper extremity pushing, pulling, reaching, and feeling" (TR. 259). Dr. Chael also advised the plaintiff to limit "balancing, stooping, crouching, and kneeling" and to avoid all climbing and crawling (TR. 259). The plaintiff was also to restrict exposure to extreme cold temperatures and vibrations, as well as to avoid all exposure to machinery and heights (TR. 259).

5

Dr. A. R. Hohensee, M.D. completed another Physical RFC Assessment on April 23, 2002 (TR. 260-67). Dr. Hohensee reached a primary diagnosis of mild right AC joint separation, a secondary diagnosis of alcoholism, and also found impairment due to a lumbar strain (TR. 260). Dr. Hohensee restricted the plaintiff to: occasional lifting of 20 pounds; frequent lifting of ten pounds; and standing, walking, and sitting for six hours, with normal breaks, during an eight-hour workday (TR. 261). Dr. Hohensee also noted limitation in using the upper extremities to push and pull due to the right arm (TR. 261).

In this assessment, Dr. Hohensee restricted the plaintiff to activity involving occasional climbing, balancing, and crawling (TR. 262). He found impairment in the plaintiff's ability to reach overhead, but indicated other reaching was unlimited (TR. 263). Dr. Hohensee noted no visual or communicative limitations (TR. 263-64). In addition, Dr. Hohensee advised the plaintiff to avoid concentrated exposure to vibration and to "avoid even moderate exposure" to hazards such as machinery and heights (TR. 264).

On April 29, 2002, Dr. Donald C. Weldon, M.D. examined the plaintiff and noticed atrophy in the right trapezuis, as well as prominence of the AC joint (TR. 316-17). Dr. Weldon detected consistent weakness in the right shoulder and determined the plaintiff was impaired in the use of his right shoulder and arm (TR. 317). In addition, Dr. Weldon concluded the plaintiff experienced chronic back pain (TR. 317). Dr. Weldon stated, "This patient is impaired due to alcoholism" (TR. 317). He observed "notable tremulousness" as did Dr. Crowder's prior examination (TR. 316). Dr. Weldon also expressed concern over the effects of the plaintiff's excessive consumption of alcohol and high doses of Acetaminophen (TR. 316).

At the administrative hearing, the plaintiff described various ailments affecting his ability to work (TR. 382-85, 387-94). When asked whether he had ongoing problems from surgery and removal of his spleen affecting his ability to work, the plaintiff stated, "it seems like I'm always sick" (TR. 382). However, the plaintiff was unable to pay for health care and had not visited a doctor when ill (TR. 382). The plaintiff testified about pain in his right shoulder (TR. 383). When asked if there was anything he was unable to do because of his shoulder, the plaintiff replied, "Well, I can't shoot a rifle, can't shoot a shotgun" (TR. 383). When asked

if he was unable to perform other activities, the plaintiff responded he experiences arm numbness at night (TR. 383). The plaintiff explained he suffers hand and arm cramping two to three times a day which lasts for over ten minutes (TR. 384-85). The plaintiff takes Tylenol to relieve pain in the middle part of his back (TR. 383-84). The plaintiff admitted that he does little at home but added he had never done much to help out around the house (TR. 385).

The plaintiff stated his hands shake and said he was unable to rest both hands on the desktop because he needed to support his right shoulder since it "pulls down." (TR. 387). The plaintiff stated he must support his right arm with his right leg in order to avoid pain (TR. 387). He indicated difficulty with using his right arm to lift objects above his head, as well as problems of balance when walking (TR. 391).

Moreover, the plaintiff experiences difficulty standing in the morning which he described as "nothing there in my back to support me" (TR. 390). The plaintiff stated he falls at times and often gets up two or three times during the night due to "aching" pain in his back (TR. 390-91). The plaintiff stumbles when he walks and also has balance problems (TR. 391). En route to his father's house four blocks away, the plaintiff stops three times to rest, each time for five or ten minutes, due to back pain (TR. 391-92).

The plaintiff stated he has a separated shoulder according to Dr. Crowder (TR. 393). The plaintiff denied his tremors resulted from his drinking habits because his father and two sisters also experience such tremors (TR. 393-394). A doctor advised the plaintiff's sister that her tremors were hereditary (TR. 394).

In his brief, the plaintiff asserts his medically determinable impairments, coupled with his testimony, support the conclusion that he is unable to procure substantial and gainful employment (Filing No. 17). The plaintiff asserts the following limitations: reaching; writing; pushing and pulling; standing, walking, lifting, and carrying; and an impaired immune system (Filing No. 17). Due to these impairments acting in concert, the plaintiff claims he is unable to secure gainful employment and should be awarded disability benefits. *Id.*

Specifically, the plaintiff claims his ability to reach using his right arm is limited in all directions (Filing No. 17, p. 15). This limitation is further impaired by the plaintiff's balance problems. *Id.* (**See** TR. 310). The plaintiff's ability to reach is also inhibited by decreased

7

grip strength on the right and weakness in the right arm generally. *Id.* These ailments are made worse by tremors. *Id.*

The plaintiff alleges his ability to write is hindered by tremors (Filing No. 17, p. 19). His ability to push and pull is limited which precludes performance of jobs proposed by the ALJ in her RFC assessment (Filing No. 17, p. 19-20). The plaintiff argues poor balance, decreased strength, and tremors inhibit his ability to lift and carry. *Id.*

Finally, the plaintiff argues his ability to work is diminished by his impaired immune system (Filing No. 17, p. 20-21). The plaintiff claims his testimony regarding frequent illness is indicative of a continuing "disease process, consistent with diminished immune system functioning" (Filing No. 17, p. 22). As further evidence of an impaired immune system, the plaintiff cites Dr. Chael's recommendation that he avoid exposure to "fumes, odors, dusts, gases, poor ventilation" (TR. 239).

At the administrative hearing, the plaintiff's wife testified she cooks, helps the plaintiff bathe, and occasionally takes off his shoes and socks at night due to his inability to bend over (TR. 399). She stated she must wash the plaintiff's hair because he is unable to raise his shoulder above his head (TR. 399). In addition, the plaintiff's wife drives because the plaintiff cannot grasp the steering wheel and sit for long periods of time (TR. 399-400).

A vocational expert (VE) also testified at the administrative hearing regarding the plaintiff's ability to perform past relevant work (TR. 402-06). The VE assessed job possibilities for a younger worker with a high school education (TR. 402). The hypothetical question posed by the ALJ involved a person who could occasionally lift 20 pounds, frequently carry or lift ten pounds, sit for six hours in an eight-hour day, and occasionally do postural activities but could not work on ladders, scaffolds, or heights due to poor balance or alcoholism (TR. 402). This hypothetical person could not be exposed to vibrations and could not work with dangerous equipment (TR. 402). In addition, this person was unable to lift his right arm above his head and could not perform a job which required a steady hand for fine fingering due to tremors (TR. 402).

Given these hypothetical limitations, the VE concluded this person may be able to return to work as an automobile service station attendant, depending on the requirements of

the particular job (TR. 404). The VE opined such an individual could perform occupations involving cleaning, cashiering, and interviewing (TR. 404-05). Finally, the VE testified if the plaintiff's testimony was to be found credible, the plaintiff would be unable to perform any type of work, including work as a service station attendant due to arm and shoulder impairments and tremors (TR. 406).

## THE ALJ'S DECISION

The ALJ found the plaintiff was not disabled pursuant to the Act and was not entitled to any disability benefits (TR. 26). The ALJ framed the issues as: 1) whether the claimant was entitled to a period of disability and disability insurance benefits under §§ 216(i) and 223 of the Act; and 2) whether the claimant was disabled (TR. 19). The Act defines "disability" as an inability to engage in any substantial gainful activity due to physical or mental impairments (TR. 19). These impairments must be expected to result in death or must last for a continuous period of at least 12 months (TR. 19).

The ALJ followed a sequential evaluation provided in 20 C.F.R. § 404.1520 and 20 C.F.R. § 416.920 to determine disability (TR. 19). First, the ALJ reviews any current work activity. § 416.920. The ALJ then evaluates the severity of any medically determinable impairments. *Id.* Next, the ALJ assesses the claimant's RFC regarding his or her ability to perform prior work. *Id.* A final step involves the assessed RFC and the claimant's ability to secure employment existing in the national economy different from his or her prior employment in view of the claimant's age, education, and work experience. *Id.*

The ALJ found the plaintiff had not performed any substantial and gainful work activity after September 18, 1999 (TR. 25). The ALJ determined the plaintiff did suffer impairments, which limited his ability to function, including: "mild" right shoulder joint (AC joint) separation, alcohol addiction, and a history of spleen problems, including stab wounds and kidney repair (TR. 25). The ALJ reasoned the plaintiff possessed the ability to perform past relevant work as an automobile service station attendant because his medical impairments did not meet the requirements recited in Appendix 1 to Subpart P of the Social Security Administration's Regulations No. 4 (TR. 25). The ALJ opined the plaintiff could lift and carry 10 pounds

9

frequently and 20 pounds occasionally (TR. 25). In addition, the plaintiff could remain seated for 6 hours, with occasional breaks and was able to perform "gross manipulation" (TR. 25). In addition, the ALJ determined the plaintiff had the ability to occasionally climb ladders, and scaffolds, as well as balance, crawl, and perform fine fingering, although these activities could not be constant due to tremors suffered by the plaintiff (TR. 25). The plaintiff was to avoid vibration and limit the use of his right shoulder in reaching over his head (TR. 25). In view of these limitations and the plaintiff's work experience, the ALJ concluded the plaintiff was able to perform past work as a service station attendant (TR. 25).

The ALJ also determined the plaintiff's testimony was not credible so as to establish disability pursuant to 20 C.F.R. § 404.1529 and 20 C.F.R. § 416.929, Social Security Ruling 96-97p, and **Polaski v. Heckler**, 739 F.2d 1320 (8th Cir. 1984) (TR. 23-26). As the plaintiff was not disabled, he was not entitled to any disability benefits under Title II or XVI of the Act, as amended (TR. 26). The Appeals Council of the Social Security Administration denied the plaintiff's request for review on July 27, 2004 (TR. 8-14). The plaintiff now seeks judicial review of the ALJ's decision since it represents the final decision of the defendant Commissioner of the Social Security Administration (Filing No. 17).

## STANDARD OF REVIEW

A district court is given jurisdiction to review a decision to deny disability benefits according to 42 U.S.C. § 405(g) (2005). A district court is to affirm the Commissioner's findings "if supported by substantial evidence on the record as a whole." **Forte v. Barnhart**, 377 F.3d 892, 895 (8th Cir. 2004). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Id*. "Whether the record supports a contrary result or whether we might decide the case differently is immaterial." **Tellez v. Barnhart**, 403 F.3d 953, 956 (8th Cir. 2005). The Commissioner's decision is to be affirmed if the findings are supported by substantial evidence. *Id*. As long as substantial evidence supports the Commissioner's decision, the decision may not be reversed merely because substantial evidence would also support a different conclusion or

because a district court would decide the case differently. ***Brown v. Barnhart***, 390 F.3d 535, 538 (8th Cir. 2004).

## DISCUSSION

### A.   Credibility Evaluation

The plaintiff argues the ALJ had no valid reason for discrediting his testimony (Filing No. 17, p. 24). The ALJ concluded the plaintiff's medically determinable limitations could be expected to produce symptoms similar to those described during testimony, yet found the plaintiff's testimony not credible (TR. 23-24). **See** Filing No. 17, p. 23. In highlighting this discrepancy, the plaintiff argues the ALJ departed from the Eighth Circuit standards used to evaluate a claimant's credibility and employs an "all-or-nothing" approach based on "incorrect legal standards, misstatements of the evidence, and reliance on facts irrelevant" to the plaintiff's RFC (Filing No. 17, p. 25).

Specifically, the plaintiff argues the ALJ used a "total preclusion" test in determining whether the plaintiff's symptoms precluded him from all types of substantial gainful work activity. *Id.* at 25-26. **See** TR. 23. Under this test, the plaintiff alleges, symptoms which do not preclude all types of substantial work activity are ignored or used to discredit the plaintiff's testimony (Filing No. 17, p. 25-26). The plaintiff claims the ALJ focused on matters, such as the plaintiff's domestic life and alcohol consumption, which were irrelevant to his physical limitations. (Filing No. 17, p. 29). Moreover, the plaintiff argues the ALJ's findings were based on exaggerations of the plaintiff's complaints which created apparent inconsistencies between objective medical findings and actual testimony (Filing No. 17, p. 29).

"The credibility of a claimant's subjective testimony is primarily for the ALJ to determine." ***Tellez***, 403 F.3d at 957. A claimant's subjective complaints of pain may be discredited if inconsistencies exist in the record as a whole. ***Guilliams v. Barnhart***, 393 F.3d 798, 801 (8th Cir. 2005). In evaluating subjective complaints of pain, an ALJ is to examine objective medical evidence in addition to the ***Polaski*** factors, including: (1) the claimant's day to day activities; (2) the duration, intensity, and frequency of pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of pain medication; and (5)

functional restrictions. ***Polaski***, 739 F.2d at 1322. In determining a claimant's complaints of pain are not credible, the ALJ must give the reasons for discrediting the testimony and explain any inconsistencies found. ***Guilliams***, 393 F.3d at 802.

This Court finds the ALJ properly evaluated the plaintiff's credibility according to legal standards and this determination was supported by substantial evidence in the record as a whole. The ALJ concluded the plaintiff had medically determinable impairments, but found his subjective complaints unsubstantiated by objective findings (TR. 23). In examining the plaintiff's testimony in light of the medical evidence, the ALJ opined nothing in the record indicated the impairments prevented the plaintiff from all full-time work activity (TR. 23). The ALJ found objective medical findings did not support the intensity and persistence of these symptoms, and reasoned the claimant states he "experiences unrelenting pain yet currently utilizes no more than over the counter analgesics and (home brew) alcohol to relieve his symptoms" (TR. 23). The ALJ opined if one experienced the intensity of pain to which the plaintiff testified, it would require some type of prescription analgesic to relieve and one would seek out programs to find and finance the medication (TR. 23). The ALJ gave much weight to the plaintiff's testimony regarding a lack of money to pursue medical care, yet the plaintiff continued to finance his use of cigarettes and alcohol (TR. 23-24, 381-82, 387).

The ALJ considered the plaintiff's history of alcoholism and its effect on his credibility (TR. 24). Three doctors who examined the plaintiff expressed concern over his use of alcohol and its effect on his physical condition (TR. 250, 317, 318). The ALJ stated while a determination of alcoholism does not contribute to the decision in this case, it does erode the credibility of the plaintiff due to his continued minimalization of his alcohol problem (TR. 24, 381-82). The ALJ concluded that the plaintiff "minimized his alcohol use" as he stated he begins drinking around 8:00 or 9:00 in the morning and drinks to the point where he can feel the effects of the alcohol (TR. 381-382). In addition, the ALJ examined the medical evidence and found none of the doctors who examined the plaintiff provided any type of permanent work restrictions or limitations (TR. 23).

"We will not substitute our opinion for that of the ALJ, who is in a better position to assess credibility." ***Eichelberger v. Barnhart***, 390 F.3d 584, 590 (8th Cir. 2004). In

*Eichelberger*, the claimant alleged an inability to secure gainful employment due to shoulder, neck, and back pain. *Id.* at 588. The ALJ determined the claimant did have objectively determinable impairments and examined the *Polaski* factors, finding that no doctor had imposed a work restriction upon the claimant. *Id.* Moreover, the claimant failed to follow through on doctor's appointments and therapy. *Id.* In view of these factors, the ALJ concluded the claimant was not credible and deferred to the ALJ's determination. *Id.*

In the instant case, the Court will defer to the ALJ's findings if supported by substantial evidence in the record as a whole. *Id.* at 589. Upon review of the evidence, it is clear the ALJ used the correct legal standards to evaluate the plaintiff's credibility as set forth in *Polaski*, 739 F.2d at 1322. Moreover, the ALJ's decision is supported by substantial evidence from the record taken as a whole. The ALJ concluded, and this Court agrees, inconsistencies in the record serve to discredit the plaintiff's allegations.

### B.    Hypothetical Question

The plaintiff alleges the hypothetical question posed by the ALJ to the VE was defective for several reasons (Filing No. 17). Specifically, the plaintiff argues the hypothetical: (1) understated the extent of the plaintiff's restrictions regarding his ability to reach; (2) failed to examine the combined effect of impairments; (3) was ambiguous as to the extent of the limitations of fine fingering; and (4) did not address all documented limitations regarding environmental exposures, pushing and pulling, grip strength, and right arm strength. **See** Filing No. 17, p. 22. The Commissioner disagrees and asserts the ALJ did consider the effects of balance problems, grip strength, and right arm weakness on the plaintiff's ability to reach, stand, walk, lift, and carry (Filing No. 20, p. 17). Moreover, the Commissioner states the hypothetical question sufficiently included all impairments supported by evidence in the record. *Id.*

A hypothetical question posed to a VE is proper if it includes all impairments accepted by the ALJ as true and excludes impairments the ALJ has reasonably discredited. *Pearsall v. Massanari*, 274 F.3d 1211, 1220 (8th Cir. 2001). A hypothetical question is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true

13

by the ALJ. *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (**citing** *Prosch v. Apfel*, 201 F.3d 1010, 1015 (8th Cir. 2000)). The Eighth Circuit held when all of the functions the ALJ addressed in the RFC were those in which she found a limitation, a court can reasonably believe those functions she omitted were those which were not limited. *Depover v. Barnhart*, 349 F.3d 563, 567 (8th Cir. 2003).

The ALJ utilized a hypothetical question involving light exertional work (TR. 402). The question included restrictions for lifting, standing and sitting, postural activities and instructed the hypothetical person not to work on ladders, ropes, and scaffolds due to poor balance or alcohol use (TR. 403). In addition, the hypothetical prohibited work with exposure to vibration and dangerous equipment, and limited work involving fine fingering to "occasionally" (TR. 403). Finally, the hypothetical included impairment caused by tremors which resulted in preclusion of detailed work requiring a steady hand (TR. 403).

A hypothetical question need only include limitations supported by the record. *Thomas v. Barnhart*, 2004 WL 3244315, 2 (8th Cir. 2004)(unpublished). In *Thomas*, the claimant alleged the ALJ failed to include all of his impairments in the hypothetical question presented to the VE. *Id.* Specifically, the claimant argued the ALJ declined to include limitations regarding his ability to sit, stand, bend repetitively, and carry. *Id.* In rejecting this allegation, the court concluded the hypothetical question was proper because it included every impairment supported by the record in its restriction of lifting, standing, walking, kneeling, and crouching. *Id.*

The hypothetical question posed by the ALJ properly considered the plaintiff's medically determinable impairments as supported by substantial evidence in the record. The hypothetical contained a restriction on lifting according to the medical evidence in the plaintiff's RFC assessment (TR. 244, 252, 259, 262). The hypothetical specifically restricted the ability to reach overhead, stating "He should not be in a job where he's required to reach overhead" (TR. 403).

The hypothetical properly considered the impairments acting together, as it restricted the individual's ability to lift, carry, stand, and sit (TR. 403). Balance was considered as it related to the ability to work on ladders, ropes, and scaffolds (TR. 403). All of these

impairments were considered in combination which resulted in limiting these activities. Moreover, postural activities were limited, as was work involving fine fingering (TR. 403). The restriction regarding "fine fingering" was not ambiguous, as the hypothetical provided "he could occasionally do it [fine fingering]" (TR. 403). The ALJ clarified, stating the plaintiff "should not do a job that would require a steady hand for fine, detailed work" (TR. 403).

The hypothetical contained an environmental restriction not to expose the hypothetical worker to vibration and dangerous equipment (TR. 403). Except for Dr. Chael's December 1999 recommendation, no other doctor provided any further environmental restrictions (TR. 239). This examination occurred four months after the plaintiff's splenectomy and Dr. Chael mentioned the plaintiff was still recovering from surgery (TR. 239). In view of the fact that no subsequent examining physician provided any similar environmental limitations, it is reasonable to infer the plaintiff was no longer limited by the above mentioned environmental hazards.

In the instant case, the ALJ properly included the impairments supported by substantial evidence in the record. The hypothetical question posed to the VE was sufficient in that considered the plaintiff's impairments in combination and included the impairments supported by the record. This Court affirms the use of the ALJ's hypothetical question.

### C.   Residual Functional Capacity

The plaintiff asserts the ALJ's findings regarding his residual functional capacity ("RCF") are unsupported by substantial evidence and determined by improper legal standards. Specifically, the plaintiff claims the ALJ did not complete a function-by-function assessment of his limitations which resulted in the omission of limitations and led the ALJ to conclude he was not disabled (Filing No. 17, p. 13-14). The plaintiff claims the ALJ did not consider the extent of his reaching, writing, pushing, pulling, standing, walking, lifting, and carrying limitations in assessing his RFC. *Id.* at 15-20. Moreover, the ALJ failed to consider the effect of balance on these activities. *Id.* The plaintiff also claims the ALJ omitted a limitation due to his impaired immune system. *Id.* at 20-22.

"An RFC determination is based on all relevant evidence in the record." ***Raney v. Barnhart***, 396 F.3d 1007, 1010 (8th Cir. 2005). RFC is defined as what the plaintiff "can still do despite. . . limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2005). RFC is an assessment based on all appropriate evidence including: a claimant's description of limitations; observations by treating or examining physicians and family; medical records; and the claimant's own description of his limitations. §§ 404.1545(a)-(c), 416.945(a)-(c). In ***Raney***, the claimant alleged the ALJ failed to address a number of impairments and their effect on her ability to walk in the RFC assessment. ***Raney***, 396 F.3d at 1010. The RFC did contain restrictions on lifting, standing, sitting, and walking, and prohibited postural activities. ***Id.*** The court determined the RFC assessment was consistent with the claimant's medical evidence. ***Id.*** Moreover, no doctor had ever determined the claimant was disabled. ***Id.*** In light of these factors, the court determined the ALJ's RFC assessment was supported by substantial evidence in the record. ***Id.***

In the instant case, the ALJ properly evaluated the plaintiff's RFC based on evidence in the record including medical examinations and testimony. The ALJ first considered the plaintiff's medically determinable impairments and concluded these limitations imposed more than slight restrictions on his ability to function (TR. 20). The following limitations were considered "severe" according to the Social Security Administration's Regulations: "'mild' right shoulder AC joint separation, substance abuse addiction (alcohol), and a history of splenectomy with stab wounds and kidney repair (TR. 20). The ALJ determined the plaintiff's RFC in light of his ability to perform prior work and analyzed the plaintiff's symptoms and their effect on his ability to procure gainful employment (TR. 21). The ALJ concluded the plaintiff's medically determinable limitations were capable of producing symptoms similar to those of which the plaintiff complained (TR. 23).

Although the ALJ concluded the plaintiff did suffer impairments substantiated by medical evidence, she failed to find these impairments prevented the plaintiff from performing all full-time work activity (TR. 23). The ALJ opined objective findings did not support the intensity and persistence of the plaintiff's pain, in addition to the fact the plaintiff stated he experienced constant pain yet took nothing more than over the counter medication and alcohol

16

to relieve his pain (TR. 23). The ALJ reasoned medical findings were "remarkable for no more than a 'mild' AC joint separation, and otherwise 'normal' lumbar findings along with 'normal' range of motion throughout the lumbar spine and right shoulder" (TR. 23). Moreover, medical evidence offered no findings of atrophy and none of the examining doctors recommended permanent work restrictions.

In light of these findings, the ALJ concluded the plaintiff's testimony as to his inability to perform any type of work was not credible (TR. 24). The ALJ thus based her opinion solely on objective medical evidence in the record which she concluded supported an assessed RFC of: ability to carry items weighing 20 pounds occasionally and ten pounds frequently; sitting for six hours (with normal breaks) within an eight-hour workday; ability to perform gross manipulation; and occasional performance of postural activities involving climbing ladders, ropes, and scaffolds, balancing and occasional fine fingering (TR. 24). In addition, the assessed RFC restricted exposure to vibrations and use of the right shoulder to reach over head, and prohibited tasks involving hazards (TR. 24).

The ALJ's assessment of the plaintiff's RFC is supported by substantial evidence in the record and properly excluded evidence not substantiated by medical evidence. The ALJ properly evaluated the plaintiff's RFC and found him capable of performing prior work as a service station attendant.

## CONCLUSION

For the reasons above, the Court concludes the Commissioner's decision is supported by substantial evidence on the record as a whole and is affirmed. Upon consideration,

**IT IS ORDERED:**

The decision of the Commissioner is affirmed, and the appeal is denied, and judgment in favor of the defendant will be entered in a separate document.

DATED this 9th day of August, 2005.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge